UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SAMUEL LOUIS-CHARLES,

                            Plaintiff,

v.

                                                 9:11-CV-0147
                                                 (GLS/TWD)

SERGEANT COURTWRIGHT, SERGEANT
NEWTOWN, OFFICER THOMAS,
OFFICER FRANK SEYMORE,

                            Defendants.
_____

APPEARANCES:                                               OF COUNSEL:

SAMUEL LOUIS-CHARLES
Plaintiff pro se
232 West Main Street Apt. #36
Watertown, New York 13601

JEFFERSON COUNTY ATTORNEY                   DAVID J. PAULSEN, ESQ.
Counsel for Defendants
175 Arsenal Street
Watertown, New York 13601

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

       This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Samuel Louis-Charles claims that Defendants, all employees of the Jefferson County Jail, violated his constitutional rights by failing to protect him from assaults by other inmates. (Dkt. No. 1.) Currently pending before the Court is Defendants' motion for summary judgment

pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 30.) For the reasons discussed below, I recommend that the Court grant Defendants' motion.

I.  **FACTUAL AND PROCEDURAL SUMMARY**

Plaintiff was an inmate at the Jefferson County Jail from September 2009 to May 2010. (Dkt. No. 30-1 at 11:19-24, 13:11.[1]) Until March or April 2010, Plaintiff was housed as a pretrial detainee. *Id.* at 13:4-12. From March or April 2010 to May 2010 he was housed as a convicted felon awaiting transportation to a state facility. *Id.* at 13:4-25.

In his verified complaint, Plaintiff alleges that he was assaulted by another inmate on or about December 4, 2009, in Pod 2A. (Dkt. No. 1 at 5A.[2]) At his deposition, Plaintiff testified that he "ran up after a guy who was a Crip member and . . . was talking nonsense out his mouth, and I chased him up the stairs, and we had got in a physical altercation on the stairs, which I was positioned down and he was positioned up, and I fell down the stairs." (Dkt. No. 30-1 at 22:9-13.) Plaintiff sustained a broken wrist. (Dkt. No. 1 at 5A.) At his deposition, Plaintiff testified that he also fractured his hip. (Dkt. No. 30-1 at 22:22.) The other inmate was not injured. *Id.* at 23:3-4. Plaintiff was disciplined for the fight, but the other inmate was not. *Id.* at 26:2-3.

After the December incident, Plaintiff requested placement in solitary confinement, but that request was denied. (Dkt. No. 1 at 5A.) Plaintiff was instead placed in Pod 1A, the housing pod for minors. *Id.* There, Plaintiff spoke directly to Defendant Sergeant Courtwright and

---

[1] Citations to page numbers in the transcript of Plaintiff's deposition refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

[2] Citations to page numbers in the complaint refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

requested placement in solitary. (*Id.*; Dkt. No. 30-1 at 26:4-23.) Defendant Courtwright refused "despite his knowledge of the risk of assault." (Dkt. No. 1 at 5A.) Defendant Courtwright promised to "look out for" Plaintiff, but he "never did." (Dkt. No. 30-1 at 28:13-22.) At his deposition, Plaintiff testified that he requested placement in solitary because "I know me, if I feel that my life is being threatened, I'm going to attack, and I knew my life was being in jeopardy, because I was . . . an outcast. These . . . guys been in this town for a lot of years, and I just [ar]rived here. I only been in this town for 87 days, and I just had a fight with one of the big . . . Crip members." (Dkt. No. 30-1 at 27:22-28:3.)

Plaintiff testified at his deposition that a lot of the minors "antagonized" him because of his fight with the Crip. (Dkt. No. 30-1 at 30:16-22.) Plaintiff asked staff why they had placed him in a pod for minors "[w]here if I do act out and assault them, I will be charged for hitting a minor." *Id.* at 30:22-23.

After about thirty days in Pod 1A, Plaintiff was moved to Pod 1B. (Dkt. No. 30-1 at 29:25-30:2, 31:8-10.) On February 10, 2010, Defendant Officer Frank Seymore[3] opened the pod too early, which allowed Plaintiff to run into the cell of inmate Everhart Benway and "assault[ ] him . . . bloody." *Id.* at 31:16-25, 39:9-11. Plaintiff testified that he attacked Benway "because his mouth and based on because I had a problem." *Id.* at 32:24-25. Plaintiff was then transferred back to Pod 1A. *Id.* at 33:6-7.

Plaintiff was kicked out of Pod 1A after getting into "an altercation with a minor where I went into his cell and took all his food." (Dkt. No. 30-1 at 15:6-7.) Plaintiff again requested

---

[3] Plaintiff testified that Defendant Seymore is a racist who "tells you, 'I don't like niggers.'" (Dkt. No. 40:12-14.)

3

placement in solitary because if "y'all keep me here, I'm going to put hands on one of these minors . . . [I]f y'all keep having me around people, I'm going to keep assaulting people." *Id.* at 37:5-11.

At his deposition, Plaintiff testified that he was moved from Pod 1A to Pod 1B "the same place where I caught the assault" in March 2010. (Dkt. No. 30-1 at 37:12-20.) Plaintiff was "immediately confronted by several inmates claiming to be friends of the inmate" who assaulted Plaintiff in December 2009. (Dkt. No. 1 at 5A.)

Plaintiff was moved "from pod to pod" until being placed in Pod 2B on or about April 18, 2010. (Dkt. No. 1 at 5A.) Sex offenders are often placed in Pod 2B. (Dkt. No. 30-1 at 20:7-8.) There, Plaintiff informed Defendant Sergeant Newton "of exactly the circumstances of my prior assaults and of the risk posed to my personal safety in this housing pod." (Dkt. No. 1 at 5A.) Plaintiff requested to be moved, but Defendant Newton denied the request despite being "aware of [Plaintiff's] history and of the risks." *Id.*

On or about April 23, 2010, Plaintiff was in a fight with another inmate. (Dkt. No. 1 at 5A.) Plaintiff alleges that Defendant Officer Frank Seymore "not only had prior knowledge of the assault, but actually participated in the orchestration of the assault." *Id.* At his deposition, Plaintiff testified that the inmate with whom he fought, Anthony Ramirez, is Defendant Seymore's "enforcer." (Dkt. No. 30-1 at 46:8-20.) Plaintiff testified that Ramirez "antagonized" him while they were at recreation by telling Plaintiff to "eat a dick." *Id.* at 46:23-47:3. Ramirez then came toward Plaintiff and Plaintiff attacked him. *Id.* at 47:5-6. They were fighting for about a minute before Defendant Thomas signaled for rovers to come and break up the fight. *Id.* at 47:7-12. Plaintiff testified that his "handsome face" was "disfigured" by the scar he still has

4

from the fight, and even though "[s]ome people don't see it, . . . I see it, and this really affect[s] me psychologically." *Id.* at 47:21-24. Plaintiff testified that Defendant Seymore came by his cell on the day after the fight and said "finally got you, huh." *Id.* at 50:8-9.

Plaintiff testified at his deposition that he needed to be in solitary because a variety of factors – including being forced to go to recreation, the manner in which guards spoke to inmates, racism, family deaths in a storm in Haiti, his limited time at home over the last two decades, and his mother's illness – caused him to "act like an animal." (Dkt. No. 30-1 at 41:17-43:22.)

Plaintiff testified at his deposition that Defendant Sergeant Newtown stripped him of his socks, sneakers, and thermal undergarments and then placed him in a cold cell for between seven and ten hours. (Dkt. No. 30-1 at 54:25-55:18.) Plaintiff testified that this happened three times. *Id.* at 55:19-21. Plaintiff testified that Defendant Newton stated that he placed Plaintiff in the cold cell "to make you understand what you be doing is not going to be permitted here, all that acting out and everything." *Id.* at 56:3-8.

Plaintiff filed his complaint in this action on February 9, 2011. (Dkt. No. 1.) The complaint explicitly asserts one claim, which is an Eighth Amendment claim for failure to protect. *Id.* at 5. Defendants now move for summary judgment. (Dkt. No. 30.) Plaintiff has opposed the motion. (Dkt. No. 36.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[4] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

B. **Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *accord Katz v. Molic*, 128 F.R.D. 35, 37-38

---

[4] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

(S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the

7

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

Defendants argue that the action must be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 30-3 at 11.[5]) Defendants have not demonstrated that they are entitled to summary judgment on this ground.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

At the Jefferson County Jail, the inmate grievance procedure is initiated by filing a

---

[5] Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

written complaint with a corrections officer, sergeant, or classification officer. (Dkt. No. 30-2 ¶ 22.) Written complaints are logged in and forwarded to the shift supervisory sergeant for response. *Id.* If an inmate is dissatisfied with the response, the inmate may appeal the result to the facility administrator. *Id.* A final appeal is available to the New York State Citizens Policy and Complaint Review Council in Albany. *Id.*

It is undisputed that Plaintiff did not exhaust the three steps of the available process. Facility Administrator Kristopher M. Spencer declares that he "has made a thorough review of the grievance log entries for the period of September 2009 through May 2010 and was unable to find any entry of a complaint" from Plaintiff. *Id.* ¶ 23. In opposition to the motion for summary judgment, Plaintiff states that he filed "a grievance and it was never handed in." (Dkt. No. 36 at 1.) In the complaint, Plaintiff alleges that this grievance "was very specific concerning the prior assaults and the risk of future assaults." (Dkt. No. 1 at 5A.) At his deposition, Plaintiff testified that he "never even [saw] how a grievance look[ed] in that county." (Dkt. No. 30-1 at 52:7-9.) Plaintiff therefore does not dispute that he failed to exhaust his available administrative remedies by receiving a response from the New York State Citizens Policy and Complaint Review Council.

Plaintiff's failure to exhaust, however, does not end the review. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[6]

First, "the court must ask whether [the] administrative remedies [not pursued by the

---

[6] The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Here, as discussed above, administrative remedies were available to Plaintiff.

Second, if those remedies were available:

> the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

*Id.* (citations omitted). Here, Defendants failed to preserve the exhaustion defense by pleading it in their answers. (Dkt. Nos. 15, 15-1, 15-2, 15-3;[7] *Jones*, 549 U.S. at 216; *Alster v. Goord*, 745 F. Supp. 2d 317, 332 (S.D.N.Y. 2010).) Therefore, they are not entitled to summary judgment on exhaustion grounds.

Even if Defendants had properly pleaded the exhaustion affirmative defense, they would not be entitled to summary judgment. Under *Hemphill*, the third inquiry states that "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Hemphill*, 380 F.3d at 686. (citations and internal quotations omitted). Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004). Here, Plaintiff states in opposition to the motion for summary judgment that "I fil[]ed a grievance

---

[7] Defendants pleaded four affirmative defenses: (1) failure to state a claim; (2) Plaintiff's full or partial culpability; (3) failure to mitigate damages; and (4) failure to file a timely Notice of Claim under New York State Municipal Law § 50-I. (Dkt. Nos. 15, 15-1, 15-2, and 15-3 ¶¶ 20-23.)

and it was never handed in. Right now I'm put in a situation where it's my word against the staff." (Dkt. No. 36 at 1.) In his verified complaint, Plaintiff states that his grievance was denied "without justification" and that there was no appeal process available to him. (Dkt. No. 1 at 5.) At his deposition, Plaintiff testified that "[t]hey never issued me a grievance when I asked numerous times." (Dkt. No. 30-1 at 52:11-12.) Plaintiff testified that in the absence of a form, he wrote his grievance on a piece of paper and gave it to the guard on duty, but nothing ever happened. *Id.* at 53:10-21. The affidavit of the Jefferson County Jail facility administrator does not describe what, if any, administrative appeal procedures are available to inmates who allege that their grievances were not properly filed or responded to at the first level of the grievance process. (Dkt. No. 30-2 ¶ 22.) This distinguishes this case from the law applicable to inmates of the New York State Department of Corrections and Community Supervision system, where regulations specifically describe the steps that inmates should take if they receive no response to a grievance at the first or second level. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2010). Because of that regulation, courts in this circuit have routinely held that the lack of a response at the first or second level of review does not justify state inmates' failure to receive a response from the final level of the state administrative process. *See Nelson v. McGrain*, No. 6:12-CV-6292 (MAT), 2013 U.S. Dist. LEXIS 151921, at * 15-16, 2013 WL 5739043, at * 6 (W.D.N.Y. Oct. 22, 2013) (collecting cases); *Cruz v. DeMarco*, No. 12-cv-4277 (JFB) (GRB), 2013 U.S. Dist. LEXIS 125549, at *22-23, 2013 WL 4719086, at *7-8 (E.D.N.Y. Sept. 3, 2013) (collecting cases).[8] Here, however, the evidence currently before the Court does not establish that Plaintiff

---

[8] The Court will provide Plaintiff with a copy of all of the unpublished decisions cited in this Report-Recommendation in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

could have appealed the alleged lack of response to the next level of the Jefferson County Jail's administrative process. Therefore, even if Defendants had properly pleaded the exhaustion defense, I would recommend that the Court deny their motion for summary judgment on exhaustion grounds.

B. **Failure to Protect**

Plaintiff claims that Defendants failed to protect him from attacks by other inmates. (Dkt. No. 1 at 5.) Defendants move for summary judgment of this claim, arguing that there is no evidence that they were deliberately indifferent to conditions posing a substantial risk of serious harm to Plaintiff. (Dkt. No. 30-3 at 5-10.) Defendants are correct.

To prevail on a failure to protect claim, a plaintiff must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials exhibited deliberate indifference to that risk.[9] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is a conscious disregard of a substantial risk of serious harm. *Id.* at 835.

Here, Plaintiff has not raised a triable issue of fact as to the first prong of his failure to protect claim. The undisputed evidence shows that he was the physical aggressor in each of his altercations with other inmates. Indeed, the gravamen of Plaintiff's complaint, to which he

---

[9] The analysis of this issue is the same for pretrial detainees and for convicted prisoners. Although technically the Due Process Clause of the Fourteenth Amendment applies to pretrial detainees while the Eighth Amendment applies to convicted prisoners, the standard for analyzing a claim of deliberate indifference to the health or safety of a convicted prison inmate held in state custody as a violation of the right of the inmate to be free from cruel and unusual punishment under the Eighth Amendment is also applicable to claims brought by pretrial state detainees under the Due Process Clause of the Fourteenth Amendment. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).

12

testified at length at his deposition, is that Defendants failed to protect him from his own violent tendencies. The parties have not cited, and the Court has not found, any cases from within the Second Circuit addressing this issue. However, courts elsewhere have concluded that an inmate's own violent tendencies are not the type of "substantial risk of serious harm" protected by the Constitution. *Johnson v. Juvera*, No. CV 12-0539-PHX-GMS (DKD), 2013 U.S. Dist. LEXIS 151527, at * 13-14, 2013 WL 5722807, at *4 (D. Ariz. Oct. 22, 2013) (officers not liable for failure to protect under § 1983 for injuries prisoner sustained during a murder that he solicited); *Bond v. Story*, No. 3:09-cv147, 2011 U.S. Dist. LEXIS 132593, at * 14, 2011 WL 5599390, at * 4 (E.D. Va. Nov. 17, 2011) (where prisoner's communication to guard suggested that prisoner himself would be the aggressor in any future violence, there was not sufficient evidence "to allow a reasonable juror to infer that Defendant . . . actually perceived that [the prisoner] faced a substantial risk of attack.") (Lauck, Mag. J.); *Indreland v. Yellowstone Cnty. Bd. of Comm'rs*, 693 F. Supp. 2d 1230, 1236, 1243 (D. Mont. 2010) (prisoner's failure to protect claim failed as a matter of law where prisoner was the aggressor in altercation with cell mate); *Miller v. Fisher*, 381 Fed. App'x 594, 597 (7th Cir. 2010) (as a matter of law, prisoner did not demonstrate a substantial risk of serious harm where evidence showed that he was the "violent aggressor" in altercation with another inmate); *Clark v. Johnson*, 181 F. App'x 606, 607-08 (7th Cir. 2006) ("the risk to [the plaintiff] was of his own making, and prison officials cannot reasonably be required to protect an inmate who intentionally instigates a violent altercation with another prisoner."). Accordingly, these courts concluded that a prisoner who is himself the aggressor in fights with other inmates cannot succeed on a failure to protect claim. *Id.* The reasoning of these cases is persuasive. Thus, Plaintiff has not raised a triable issue of fact that he

faced a substantial risk of serious harm as that term is defined in the constitutional context.

Even if Plaintiff had raised a triable issue of fact as to the first prong of his failure to protect claim, his claim would fail because there is no evidence that the named Defendants were deliberately indifferent. At his deposition, Plaintiff asserted that he should have been placed in solitary confinement with no recreation period in order to protect him from himself. (Dkt. No. 30-1 at 41:17-43:22.) It is undisputed that none of the named Defendants had the authority to place Plaintiff in administrative segregation or protective custody or to move him to a different housing unit. (Dkt. No. 30-2 ¶ 21.) Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Thus, even if Plaintiff had raised a triable issue of fact that he faced a substantial risk of serious harm and that placing him in solitary confinement was the proper response to that risk, these Defendants would not be liable. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's failure to protect claim.

**C.    Conspiracy**

Read broadly, the complaint may assert a conspiracy claim against Defendant Seymore.[10] (Dkt. No. 1 at 5A.) Defendants move for summary judgment dismissing this claim. (Dkt. No.

---

[10]    The complaint lists only one cause of action, which is the failure to protect claim. (Dkt. No. 1 at 5.)

30-3 at 10.) The Court should grant the motion.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted). Here, there is no evidence in the record of an agreement between Defendant Seymore and inmate Ramirez to inflict a constitutional injury. Even viewed in the light most favorable to Plaintiff, the evidence shows merely that Ramirez verbally insulted Plaintiff and that Defendant Seymore later said that he "finally got" Plaintiff. No reasonable juror could conclude that such an attenuated set of circumstances constituted a meeting of the minds to inflict a constitutional injury. Therefore, I recommend that the Court dismiss the conspiracy claim.

### D. Conditions of Confinement

The complaint does not contain a conditions of confinement claim, but Plaintiff testified at his deposition that Defendant Newton subjected him to cold conditions in a cell. (Dkt. No. 30-1 at 54:25-56:8.) I recommend that the Court dismiss any belatedly-asserted conditions of confinement claim sua sponte pursuant to 28 U.S.C. § 1915(e)(2) (2006).

The Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer*, 511 U.S. at 832. To establish a conditions of confinement claim, a plaintiff must prove both an objective and a subjective component. *Id.* at 834. To satisfy the objective component, a prisoner must show that the defendant's "act or omission . . . result[ed] in the denial of the minimal civilized measure of life's necessities." *Id*. Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim."

15

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Second Circuit has held that proof that the inmate was subjected "for a prolonged period to bitter cold" is sufficient to raise a triable issue of fact as to the objective prong. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (holding that summary judgment for defendants was precluded where prisoner was subjected to temperatures near or well below freezing in his cell for a five-month period); *see also Wright v. McMann*, 387 F.2d 519, 526 (2d Cir. 1967) (vacating a dismissal on the pleadings where the complaint alleged that prisoner was deliberately exposed to bitter cold for periods of twenty-one days or more while in solitary confinement); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (holding that summary judgment for defendants was precluded where prisoner was subjected to bitter cold in cell for three months).

Where an inmate has not been subjected to "bitter cold" for a "prolonged period," the Second Circuit has held that summary judgment for prison officials is appropriate. In *Trammell v. Keane*, 338 F.3d 155 (2d Cir. 2003), the plaintiff was deprived of clothing and confined to his cell for a few weeks as a disciplinary measure for his behavior. *Trammell*, 338 F.3d at 159. The Second Circuit found that summary judgment for the defendants was appropriate because the plaintiff had failed to allege that his cell was open to the elements, lacked adequate heat, or that he had been subjected to "bitter cold." *Trammell*, 338 F.3d at 165. The Second Circuit stated that it "[had] no doubt that Trammell was made uncomfortable by the deprivation of his clothing, but there [was] simply no factual dispute regarding whether the temperature in his cell posed a threat to his 'health or safety' of the sort that would disallow summary judgment in the defendants' favor." *Id.*

Here, Plaintiff testified that on three occasions he was subjected to cold conditions for, at

most, ten hours. (Dkt. No. 30-1 at 54:25-55:18.) This evidence is insufficient to raise a triable issue of fact. Therefore, I recommend that the Court sua sponte dismiss any conditions of confinement claim.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 30) be **GRANTED** and that judgment be entered in favor of Defendants; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Bond v. Story*, No. 3:09-cv147, 2011 U.S. Dist. LEXIS 132593, 2011 WL 5599390 (E.D. Va. Nov. 17, 2011); *Cruz v. DeMarco*, No. 12-cv-4277 (JFB) (GRB), 2013 U.S. Dist. LEXIS 125549, 2013 WL 4719086 (E.D.N.Y. Sept. 3, 2013); *Johnson v. Juvera*, No. CV 12-0539-PHX-GMS (DKD), 2013 U.S. Dist. LEXIS 151527, 2013 WL 5722807 (D. Ariz. Oct. 22, 2013); and *Nelson v. McGrain*, No. 6:12-CV-6292 (MAT), 2013 U.S. Dist. LEXIS 151921, 2013 WL 5739043 (W.D.N.Y. Oct. 22, 2013).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: January 7, 2014
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge